UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Leadium, Inc., a Delaware corporation, | Court File No.: __24-cv-3257__ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Shah Enterprises, LLC d/b/a Leadium Solution, a Minnesota limited liability company, | |
| Defendant. | |

Plaintiff LEADIUM, INC. ("Plaintiff"), for its complaint against Defendant SHAH ENTERPRISES, LLC d/b/a LEADIUM SOLUTION ("Defendant"), through counsel, states and alleges:

## NATURE OF THE ACTION

1. This is an action for trademark violations based on Defendant's use of Plaintiff's pre-existing trademark "LEADIUM" as the salient element of Defendant's business name "LEADIUM SOLUTION".

2. Here, Plaintiff asserts claims for false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for trademark dilution under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and for substantial and related claims of trademark infringement under common law and Minnesota Law, all arising from the Defendant's unauthorized use of "LEADIUM SOLUTION" in connection with the marketing, advertising, promotion, offering for sale, and sale of Defendant's lead generation services.

1

3. Plaintiff sues to protect the substantial goodwill it has developed over years of use of its distinctive mark "LEADIUM" to identify itself as the source of high-quality lead generation services.

4. The goodwill and reputation for quality that Plaintiff has worked so hard to cultivate is being threatened by Defendant's actions. Defendant has used and continues to use the term "LEADIUM SOLUTION," which is confusingly similar to Plaintiff's "LEADIUM" mark, to provide virtually identical services within the field of lead generation. Unless Defendant is enjoined from such use, said use will continue to cause consumer confusion and will cause irreparable harm to Plaintiff.

## PARTIES

5. Plaintiff Leadium, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Nevada.

6. Defendant Shah Enterprises LLC dba Leadium Solution is a Minnesota limited liability company with its principal place of business in Minnesota.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1331, 1338(a), 1338(b), and 1367(a) and under 15 U.S.C. sections 1117, 1125(a), and 1125(c), because this action involves substantial claims arising under the Lanham Act.

8. This Court has supplemental jurisdiction over Plaintiff's common law claims under 28 U.S.C. section 1367(a).

9. This Court has personal jurisdiction over Defendant because Defendant is a limited liability company organized in and principally based in Minnesota.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PLAINTIFF AND ITS MARK

11. Plaintiff is a nationally recognized brand with a reputation for excellence in the sales and lead generation space.

12. Plaintiff incorporated as Leadium, Inc. under the laws of Delaware on November 29, 2016.

13. Before Defendant's adoption of LEADIUM SOLUTION, Plaintiff has had common-law trademark rights in LEADIUM as an exclusive source identifier for Plaintiff's lead generation and sales management services.

14. Plaintiff has continuously used LEADIUM as its distinctive service mark in connection with the advertising, promotion, offering for sale, and sale of lead generation and sales management services in national interstate commerce since 2016.

15. Plaintiff's stylized mark is shown below:



16. The mark LEADIUM is inherently distinctive as a suggestive trademark hinting at, but not describing, Plaintiff's lead generation services.

17. The mark LEADIUM also has acquired distinctiveness from nationwide advertising throughout more than seven years of continuous use in interstate commerce in connection with Plaintiff's lead generation and sales management services.

18. Plaintiff's mark LEADIUM is not only a protectable trademark, but the mark is also famous due to its wide national recognition as Plaintiff's source identifier.

19. As a specialist in sales acquisition and lead generation, Plaintiff has applied its own digital marketing tools to make itself a widely recognized service provider under the distinctive service mark LEADIUM.

20. Since adopting the mark in 2016, Plaintiff has continuously used the LEADIUM mark on its website and in its national advertising and publicity promoting Plaintiff's lead generation and sales management services.

21. The mark LEADIUM is widely recognized by the consuming public of the United States as the source for Plaintiff's services.

22. Plaintiff's mark LEADIUM was nationally famous before the start of Defendant's unlawful infringement alleged herein.

## DEFENDANT'S UNLAWFUL ACTIVITIES

23. On or about September 22, 2023, Defendant began offering lead generation services in interstate commerce under the name LEADIUM SOLUTION ("the Infringing Mark").

24. Defendant's services are identical in type to Plaintiff's, as both companies offer lead generation services to facilitate business growth.

25. Defendant's services are targeted to real estate professionals. Plaintiff offers similar services broadly targeted across a variety of industries.

26. The two marks are stylized in similar fonts and both end with a period, as depicted below:

  

     **LEADIUM (Plaintiff)**       **LEADIUM SOLUTION (Defendant)**

27. Upon information and belief, Defendant stylized its mark based on Plaintiff's trademark.

28. Upon information and belief, Defendant knowingly ignored Plaintiff's trademark rights in adopting and continuing to use the Infringing Mark, despite Plaintiff's prominent use of the service mark LEADIUM in the industry for at least five years before Defendant's use of LEADIUM SOLUTION.

29. There have been numerous instances of actual confusion resulting from the striking similarity between LEADIUM (Plaintiff) and LEADIUM SOLUTION (Defendant).

30. Plaintiff has a page on Clutch, a business reviews website. Plaintiff's Clutch page has received numerous one-star reviews from individuals who interacted or sought to interact with Defendant and who were complaining about Defendant's services. Plaintiff has promptly contacted Clutch, which removed the negative reviews after first confirming with the reviewer that the review was misdirected because it was intended for Defendant.

31. Counsel for Plaintiff sent Defendant a cease-and-desist letter on April 4, 2024, stating that Defendant was and is infringing Plaintiff's LEADIUM mark.

32. Defendant refuses to comply with the letter's demands and continues to engage in commerce under the Infringing Mark.

## COUNT I
### Federal Unfair Competition – 15 U.S.C. sec. 1125(a)

33. Plaintiff restates and realleges paragraphs 1 through 32 above, as if fully set forth herein.

34. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's services.

35. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to cause consumers to mistakenly believe that Defendant's services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is affiliated with or sponsored by Plaintiff.

36. Plaintiff's mark and the Infringing Mark carry the same commercial impression due to similarity of sight, sound, and meaning.

37. Upon information and belief, Defendant's services that are marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are highly similar to the services Plaintiff provides to its customers.

38. Defendant's clientele of real estate professionals is a subset of Plaintiff's broader customer base, which consists of businesses across a range of industries including real estate.

39. Plaintiff and Defendant promote their respective services under their respective marks through overlapping trade channels.

40. Both parties promote their services primarily using online channels, increasing the risk of customers seeking Plaintiff or Defendant online misunderstanding the source, sponsorship, or affiliation of the parties' respective services.

41. There have been multiple known instances of actual confusion between Plaintiff and Defendant within the past year as the result of the confusing similarity between Plaintiff's service mark and the Infringing Mark.

42. Upon information and belief, Defendant was aware of Plaintiff's trademark rights before April 4, 2024, and has been deliberately disregarding Plaintiff's rights.

43. Plaintiff on April 4, 2024, sent Defendant a cease-and-desist letter regarding the above-complained misconduct and asked Defendant to discontinue use of the Infringing Mark. By failing to stop using the Infringing Mark, Defendant continues to willfully infringe Plaintiff's trademark rights.

44. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's services originate from, are associated, or affiliated with, or otherwise authorized by Plaintiff.

7

45. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public. Unless enjoined by this court, Plaintiff has no adequate remedy at law.

46. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, disgorgement of Defendant's profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

47. Plaintiff is further entitled to enhanced damages and profits due to Defendant's willful infringement.

## COUNT II
### Federal Service Mark Dilution – 15 U.S.C. sec. 1125(c)

48. Plaintiff restates and realleges paragraphs 1 through 47 above, as if fully set forth herein.

49. Plaintiff's LEADIUM service mark is distinctive and protectable at common law due to years of use and wide recognition in the industry.

50. Plaintiff's LEADIUM service mark is famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), because the mark is widely recognized by the consuming public of the United States as an indicator of the source of Plaintiff's services.

51. Defendant's acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous LEADIUM mark.

52. Defendant's acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiff's LEADIUM service mark by undermining and damaging the valuable goodwill associated therewith.

53. The negative Clutch reviews falsely associated with Plaintiff, but which were meant to describe Defendant's services, are evidence that Defendant's activities have begun to tarnish Plaintiff's mark.

54. Defendant's acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have caused Plaintiff irreparable damage, and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

55. Plaintiff is entitled to, among other relief, an award of actual damages, disgorgement of Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
### Common-Law Service Mark Infringement

56. Plaintiff restates and realleges paragraphs 1 through 55 above, as if fully set forth herein.

57. Plaintiff has common law rights in its distinctive service mark LEADIUM, which is recognized by the consuming public as a source identifier for Plaintiff's lead generation services as the result of Plaintiff's consistent Internet presence and advertising over the past seven years.

58. Plaintiff acquired common law rights in its distinctive service mark LEADIUM prior to Defendant starting the unlawful activities described herein.

59. Defendant was and is using the Infringing Mark in connection with advertising and offering its own lead generation services that are highly similar to Plaintiff's services.

60. Plaintiff's mark LEADIUM and Defendant's business name LEADIUM SOLUTION are confusingly similar in sight, sound, and meaning, especially as depicted in paragraph 26 above with practically identical fonts and stylization.

61. Both parties promote their services primarily using online channels, increasing the likelihood of customers seeking Plaintiff or Defendant online becoming confused as to the source, sponsorship, or affiliation of the parties' respective services.

62. Within the past year, there have been multiple instances of customers being confused as to the association between Plaintiff, Defendant, and the parties' respective services.

63. Defendant's use of the Infringing Mark in the State of Minnesota is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's services to the detriment of Plaintiff.

64. Defendant's wrongful activities in the State of Minnesota have caused the Plaintiff irreparable injury. Plaintiff is informed and believes that unless said conduct is enjoined by this Court, Defendant will continue and expand those activities and causes continued and irreparable injury of Plaintiff. Plaintiff's belief is bolstered by Defendant's refusal to discontinue use of the Infringing Mark at Plaintiff's reasonable request.

65. Unless enjoined, Defendant's ongoing infringement will impair the distinctiveness of the Plaintiff's mark and injury to Plaintiff's reputation that cannot be remedied through damages, and Plaintiff has no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctions restraining and enjoining Defendant's and its agents, employees, and all persons acting, with, or on their behalf, from using in commerce the Infringing Mark or any colorable imitation of Plaintiff's mark.

66. Plaintiff is also entitled to recover (i) Defendant's profits, (ii) Plaintiff's ascertainable damages, and (iii) Plaintiff's costs of suit. Defendant's willful use of Plaintiff's service mark without excuse or justification entitles Plaintiff to its reasonable attorneys' fees.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial in this action on all issues and claims triable of right by a jury.

## **RELIEF**

**WHEREFORE**, Plaintiff prays for relief and an order of this Court as follows:

1. Enter judgment that Plaintiff owns valid and enforceable common-law trademark rights in the service mark LEADIUM as a source identifier for Plaintiff's marketing and lead generation services.

2. Enter judgment that Defendant's unauthorized use of the confusingly similar term LEADIUM SOLUTION in connection with marketing and lead generation services constitutes federal unfair competition in violation of 15 U.S.C. section 1125(a);

3. Enter judgment that Defendant's unauthorized use of the confusingly similar term LEADIUM SOLUTION in connection with marketing and lead generation services has diluted and tarnished Plaintiff's famous service mark, thus violating 15 U.S.C. section 1125(c);

4. Enter judgment that Defendant's unauthorized use of the confusingly similar term LEADIUM SOLUTION in connection with marketing and lead generation services constitutes trademark infringement under Minnesota common law;

5. Permanently enjoin and restrain Defendant, along with its agents, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them, from using the term LEADIUM—alone or combined with other words or symbols—as a service mark, trade name component, or otherwise, to market, advertise, distribute, or identify Defendant's products or services;

6. Enter an order requiring Defendant to immediately discontinue using the domain name www.leadiumsolution.com;

7. Under 15 U.S.C. section 1116(a), direct Defendant to file with the Court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing

and under oath setting forth in detail the manner and form in which Defendant complied with the injunction;

8. Under 15 U.S.C. section 1118, require Defendant and all others acting under Defendant's authority, at their cost, to deliver and destroy all devices, literature, advertising, labels, and other material in their possession bearing the infringing service mark;

9. (k) Award Plaintiff all damages sustained as the result of Defendant's acts of infringement, dilution and unfair competition, said amount to be trebled, together with prejudgment interest under 15 U.S.C. section 1117;

10. Award treble actual damages and profits under 15 U.S.C. section 1117(b) because Defendant's conduct was willful within the meaning of the Lanham Act;

11. Award Plaintiff its attorneys' fees and costs under 15 U.S.C. section 1117, or as otherwise allowed by law;

12. Award Plaintiff punitive damages; and

13. Grant Plaintiff additional, other or further relief as the Court deems proper.

Dated: <u>August 14, 2024</u>          **DOUGHERTY, MOLENDA, SOLFEST, HILLS & BAUER P.A.**

<u>s/ Matthew J. Schaap</u>
Matthew J. Schaap, I.D. 323421
Cassandra C. Wolfgram, I.D. 399569
14985 Glazier Avenue, Suite 525
Apple Valley, Minnesota 55124
Phone: (952) 953-8816
Fax: (952) 432-3780
mschaap@dmshb.com
cwolfgram@dmshb.com

***Attorneys for Plaintiff***